STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| **Nowicki Building Permit** | } | **Docket No. 77-4-05 Vtec;** |
| (Appeal of Nowicki); | } | |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | } | \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* |
| | } | |
| **Richards v. Dechert, et al.; and** | } | **Docket No. 156-8-05 Vtec; and** |
| | } | |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | } | \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* |
| | } | |
| **Nowicki NOV Appeal** | } | **Docket No. 220-10-05 Vtec** |
| (Appeal by Richards) | } | |
| | } | |

## Decisions on Pending Motions

There are three actions now pending in this Court involving one common question concerning the residential development of a parcel of land in the Town of Norwich (Town). These appeals represent the Court's third opportunity to resolve litigation between the developer and his neighbor, Appellee Stuart L. Richards. This Decision is intended to address all motions pending in all three cases, as well as legal issues that are ripe for resolution at this stage of each proceeding.

In all three pending dockets, Appellant Paul Nowicki (hereinafter Developer) is represented by Gerald R. Tarrant, Esq.; Appellee Stuart Richards, joined by his wife Miriam in Docket No. 156-8-05 Vtec (hereinafter referred to individually and collectively as Neighbor), are represented by John D. Hansen, Esq. In Docket No. 156-8-05 Vtec, the Town and Zoning Administrator Philip Dechert are represented jointly by Frank H. Olmstead, Esq. and James F. Carroll, Esq.

Docket No. 77-4-05 Vtec concerns an appeal filed by Developer from a decision of the Town of Norwich Development Review Board (DRB), denying his application for

an after-the-fact zoning permit to construct a single-family dwelling at 84 Elm Street. The second matter, Docket No. 156-8-05 Vtec, is best described as a private enforcement action initiated by Neighbor against Developer, the Town and the Town Zoning Administrator. The third and last pending docket is an appeal by Neighbor from the Zoning Administrator's decision not to initiate an enforcement action against Developer, which was upheld by the DRB in its Decision of October 17, 2005.

We first focus our analysis on the first appeal (Docket No. 77-4-05 Vtec) because the outcome of that appeal is determinative of the issues raised in the other two pending dockets.

In the first appeal, Neighbor and Developer have filed cross-motions for summary judgment and replies to those motions. Each party seeks a resolution, in their respective favor, on all issues raised by Developer's Statement of Questions, which may be summarized as follows:

1. Do recent changes in 24 V.S.A. Ch. 117 allow this Court to issue an after-the-fact zoning permit for the construction of a single-family dwelling on 84 Elm Street?

2. Which law controls when a developer applies for a permit for an already-built structure: the law in effect at the time of construction or the law in effect when a completed zoning application is filed?

3. Does 24 V.S.A. § 4412(2) (2005) remove restrictive language in the former 24 V.S.A. § 4406(1) (2003), requiring the merger of contiguous existing small lots in unified ownership? Further, does 24 V.S.A. § 4412(2) now allow municipalities to adopt or maintain bylaws that are more permissive of the development of existing small lots?

4. Are the Town of Norwich Zoning Regulations (Regulations) now in effect consistent with 24 V.S.A. § 4412(2)? and

5. Does Developer's previously completed construction conform to all currently applicable zoning requirements, so as to render issuance of a zoning permit proper?

## Factual Background

For purposes of our analysis of each party's motions, we note that any facts in dispute are viewed in a light most favorable to the non-moving party. Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990). Most of the facts that are material to the pending appeals are not in dispute. The parties' disputes center for the most part on the interpretation of the applicable legal standards. The material facts, including those that we must view in a light most favorable to the non-moving party, are as follows:

1.      In 1996, Developer purchased two adjoining lots at 76 and 84 Elm Street from an individual who had held joint title to both parcels since 1967. The two lots are separately described in a single deed by which Developer acquired title in his 1996 purchase.

2.      The lot at 76 Elm Street is approximately 14,950 square feet and is known as parcel 1. The lot at 84 Elm Street is approximately 24,000 square feet and is known as parcel 2.

3.      Both lots are in the Town's Village Residential zoning district (VR District). Prior to 1981, the VR District had a minimum lot size requirement of 8,000 square feet. However, when the Town adopted amendments to its Regulations in 1981, the VR District minimum lot size requirement was increased to 20,000 square feet. Thus, as of the 1981 zoning amendment, parcel 1 became an undersized lot that did not then conform to the Regulations.

4.      Neighbor owns and resides at the adjoining property at 82 Elm Street, which is behind parcels 1 and 2. Neighbor accesses his lot by a twenty-foot-wide private right-of-way that runs from Elm Street along the common border between parcels 1 and 2. Neighbor's home generally sits behind parcel 1.

5.      Both Neighbor's property and Developer's parcel 2 are bounded on the southwest by Blood Brook.

6. In 1997, Developer applied for and received a zoning permit to renovate the house on parcel 1 within its existing footprint. That zoning permit was never appealed and is now final, pursuant to 24 V.S.A. § 4472(d). Developer subsequently sold the house on parcel 1 to a third party, who has since resold the property.

7. In September 1999, Developer first applied for a zoning permit to construct another house on parcel 2. Neighbor appealed the Town's issuance of that zoning permit to this Court and then to the Vermont Supreme Court, which eventually remanded the case to this Court. See In re Appeal of Richards, 174 Vt. 416 (2002) (hereinafter Richards I). After the decision on remand here, Neighbor again appealed to the Vermont Supreme Court, which issued a decision in In re Appeal of Richards, 2005 VT 23 (hereinafter Richards II), on February 5, 2005. We provide a further procedural history of the parties' subsequent litigation below.

8. During the pendency of litigation between Neighbor and Developer, Developer constructed a single-family dwelling on parcel 2 in 1999-2000 without first obtaining a final determination as to the validity of the zoning permit for that house.

9. While the appeal of Developer's first permit application for parcel 2 was still pending, the Vermont zoning enabling statute relating to existing small lots was revised and recodified at 24 V.S.A. § 4412(2), effective July 1, 2004.

10. Conscious of the amendments to the applicable provisions of the zoning enabling statute, Developer filed a second permit application for a house on parcel 2 on January 5, 2005.

11. In his 2005 application, Developer seeks permit approval for the previously constructed "L-shaped" single-family residence on parcel 2. This two-story, 56' x 40' house has a front setback of seventy feet, a rear setback of twenty-six feet, a right side setback of forty-eight feet, a left side setback of sixty feet, and is twenty-three feet high. Attached to the northeasterly end of the house on parcel 2 is a garage that is accessed from the twenty-foot-wide right-of-way also serving Neighbor's house.

12. Developer's second zoning permit application was approved by the Town Zoning Administrator on January 18, 2005. Neighbor appealed that approval to the DRB, which granted his appeal and overturned the permit approval by its Decision on April 1, 2005. Developer filed his notice of appeal of the DRB's denial with this Court on April 15, 2005.

13. Subsequent to both the DRB's denial of Developer's second permit application and Developer's appeal of that decision, Neighbor filed a complaint in this Court on August 1, 2005, against Developer, the Town and the Town's Zoning Administrator, Philip Dechert.[1] This complaint is the subject of Docket No. 156-8-05 Vtec. By this action, Neighbor seeks enforcement of Developer's alleged violation of the Zoning Regulations for constructing a house on parcel 2 without a valid zoning permit.

14. All defendants named in the complaint in Docket No. 156-8-05 Vtec have moved for dismissal of that action. We address these motions below.

15. It appears that, since the conclusion of the proceedings before the Supreme Court in Richards I and Richards II, Neighbor has been attempting to convince the Zoning Administrator to initiate an enforcement action against Developer. By letter dated June 16, 2005, the Zoning Administrator advised that he did not agree "that [Developer] is [now] in violation of the zoning regulations" in light of his approval of Developer's 2005 permit and the appeal pending in regards to that permit application in Docket No. 77-4-05 Vtec. A copy of the Zoning Administrator's June 16, 2005 letter was attached to Developer's Motion to Dismiss in Docket No. 156-8-05 Vtec as Attachment 8.

16. Because Neighbor regarded the Zoning Administrator's June 16, 2005 letter as a final determination, he appealed the decision not to pursue an enforcement action to the DRB. By Decision dated October 17, 2005, the DRB denied Neighbor's

---

[1] An interested person, as defined in 24 V.S.A. § 4465(b), may bring an action in this Court to enforce a decision from an appropriate municipal panel, such as the DRB in this case. See 24 V.S.A. § 4470(b). Section 4470(b) authorizes the action to be in the form of a "mandamus, injunction, process of contempt, or otherwise." Id.

appeal, effectively affirming the Zoning Administrator's determination that an enforcement action by the Town was not warranted at that time. Neighbor thereafter appealed the DRB's decision to this Court. That appeal is the subject of Docket No. 220-10-05 Vtec.

**Procedural Background**

Whenever parties in a specific dispute appear on multiple occasions before the trial court and our Supreme Court, the procedural history of the cases requires careful recitation. Such is the case here. We find that the following procedural history is relevant to our consideration of the pending dockets:

1. In Richards I, the Supreme Court determined that because Developer's parcel 1 did not meet the 20,000 square-foot minimum lot size for the Village Residential zoning district, Developer could not develop parcel 2 independent of the already developed parcel 1. Richards I, 174 Vt. at 420–21. The Court found that Regulations § 8, allowing the development of certain lots not meeting the applicable minimum lot size, conflicted with and was therefore superseded by the provision in the Vermont zoning enabling statute relating to existing small lots, which at that time was codified in the former 24 V.S.A. § 4406(1) (2003). Richards I, 174 Vt. at 421–23.

2. The Court also found in Richards I that Developer had a valid septic permit for parcel 2, which was issued under the Town's septic ordinances and was the subject of an earlier Supreme Court decision in Richards v. Nowicki, 172 Vt. 142, 151 (2001). Richards I, 174 Vt. at 425. The Court concluded in Richards I that, as of 1996 when Developer purchased his property, parcels 1 and 2 had already merged by operation of law under the language of 24 V.S.A. § 4406(1) when the Town adopted the 20,000-square-foot minimum lot size in 1981. The Court determined that there was a remaining question of whether the right-of-way separating parcel 1 and parcel 2 prevented the merger that otherwise took place in 1981, and therefore remanded the appeal of Developer's first zoning permit application to the Environmental Court for

the specific purpose of determining whether the right-of-way "because of location and function" separated parcels 1 and 2 so that they may not be used as one lot. Richards I, 174 Vt. at 426.

3. This Court rendered its decision on that remand on November 7, 2003, finding that the present and possible future use and function of the right-of-way prevented the parcels from merging. Neighbor again appealed to the Supreme Court.

4. In its February 9, 2005 Entry Order in Richards II, the Supreme Court reversed this Court's 2003 decision and concluded that the evidence presented lacked a foundation for the conclusion that, as of 1981 when the Town's 20,000 square-foot minimum lot size requirement was enacted, the use of the right-of-way effectively separated parcel 1 and parcel 2 so as to prevent the merger of the previously separate lots by operation of law. Thus, the Supreme Court concluded that under the provisions of 24 V.S.A. § 4406(1) (2003) and the precedent of Wilcox v. Vill. of Manchester Zoning Bd. of Adjustment, 159 Vt. 193 (1992), parcels 1 and 2 merged in 1981 by operation of law to form a single conforming lot, thereby preventing the development of a second single-family residence on parcel 2—the lot at 84 Elm Street. Richards II, 2005 VT 23, ¶ 12.

5. Prior to the Supreme Court's Decision in Richards II, Developer filed his second application for a zoning permit on January 5, 2005, now the subject of pending Docket No. 77-4-05 Vtec.

## Discussion

### I. Res judicata

At the outset, we address Neighbor's argument that this Court does not have jurisdiction over the first appeal, based on the principals of res judicata, in light of the Supreme Court's decision to deny Developer's zoning permit in Richards II. While Neighbor is correct that the parties and property in Docket No. 77-4-05 Vtec are identical to those in Richards I and Richards II, we note that the statute central to the

Supreme Court's holdings in Richards I and Richards II, the former 24 V.S.A. § 4406(1) (2003), is no longer in effect. Thus, the pending appeal is not barred by the doctrine of res judicata.

The doctrine of res judicata "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the 'parties, subject matter and causes of action are identical or substantially identical.'" Berlin Convalescent Ctr. v. Stoneman, 159 Vt. 53, 56 (1992) (quoting Berisha v. Hardy, 144 Vt. 136, 138 (1984)). In this instance, Developer's action is not barred by the doctrine of res judicata because the cause of action in this appeal involves the interpretation of Vermont's new existing small lot statute, 24 V.S.A. § 4412(2) (2005), as opposed to the former existing small lot statute upon which the Supreme Court based its decision in Richards I and Richards II.

We are directed to apply the law in effect when a complete application is filed. In re Champlain Oil Company, 2004 VT 44, ¶ 8 (citing Smith v. Winhall Planning Commission, 140 Vt. 178, 181-82 (1981)).[2] Developer filed his present application for a zoning permit on January 5, 2005, after the effective date of the statutory changes to the Vermont Planning and Development Act. See 2003, No. 115 (Adj. Sess.), § 119(a), as corrected by 2003, No. 122 (Adj. Sess.), § 296(1)(a)(2) (stating that the changes pertaining to local planning and bylaws, including 24 V.S.A. § 4412(2) shall take effect July 1, 2004). Thus, following the Supreme Court's line of analysis in Richards I, 174 Vt. at 418–19, we must determine whether 24 V.S.A. § 4412(2), the new statutory provision regulating the development of existing small lots, authorizes this Court to treat parcel 1 as an existing small lot, which would then allow Developer to develop parcel 2 as a separate, conforming lot.

---

[2] The facts in Champlain Oil and Smith are slightly different than the application here, in that they involved an amendment to the zoning regulations initiated while a permit application was pending. Neighbor here has not cited us to precedent with a fact pattern identical to the pending appeal (i.e.: change in zoning law occurred after construction was completed, but before a permit application was submitted). We believe the Champlain Oil and Smith precedents are most applicable and therefore employ them here.

## II.     Definitions of existing small lots

It is undisputed that the Zoning Regulation amendments in 1981 increased the minimum lot size to 20,000 square feet for the VR District.  At that time, parcel 1 consisted of 14,950 square feet and thus did not conform to the Regulations.  As our Supreme Court held in Richards I, because Developer owned both nonconforming parcel 1 and the adjoining undeveloped parcel 2, the two lots merged by operation of law for the purposes of zoning, pursuant to the language of 24 V.S.A. § 4406(1).  Richards I, 174 Vt. at 421.

The Supreme Court's ruling that parcels 1 and 2 had merged as of the zoning amendment in 1981, preventing the independent development of parcel 2, was based on the Court's conclusion that the Town's provision allowing for development of existing small lots, Zoning Regulations § 8, was "more permissive than the state statute," Richards I, 174 Vt. at 422.  The Court found that § 8 failed to conform to the state statute, and interpreted that statute as limiting a municipality's control over the development of undersized lots.  Richards I, 174 Vt. at 424.

In ruling that § 8 was invalid, the Court specifically found that 24 V.S.A. § 4406(1) embodied one of the central purposes of the state zoning statute—the elimination of nonforming uses.  Richards I, 174 Vt. at 424.  The Court specifically noted that:

> Where our Legislature has spoken clearly about the circumstances under which existing small lots may be developed, we will not give effect to a municipal ordinance that would allow development under more expansive circumstances.  The municipality has no authority to overrule the clear intent of the Legislature.

Id. at 424–425 (citation omitted).  See also In re McCormick Mgmt. Co., 149 Vt. 585, 589–90 (1988) (a goal of zoning is to eliminate nonconforming uses).

We are now faced with the task of interpreting the new enabling statute relating to undersized lots, 24 V.S.A. § 4412(2).[3] When construing statutes, our primary goal is to give effect to the Legislature's intent. Herrick v. Town of Marlboro, 173 Vt. 170, 173 (2001). The definitive source of legislative intent is the statutory language, by which we are bound unless it is uncertain or unclear. Id.

At first glance, the task of comparing the former statute, 24 V.S.A. § 4406(1), with the now applicable statute, 24 V.S.A. § 4412(2), appears straightforward. Subsection (C) was added to the new statute, which states in its entirety that "Nothing in this subdivision (2) shall be construed to prohibit a bylaw that is less restrictive of development of existing small lots." The directness of this language suggests that a

---

[3] The applicable provisions of 24 V.S.A. § 4412 are as follows:

Notwithstanding any existing bylaw, the following land development provisions shall apply in every municipality:

. . . . .

(2) **Existing small lots.** Any lot that is legally subdivided, is in individual and separate and nonaffiliated ownership from surrounding properties, and is in existence on the date of enactment of any bylaw, including an interim bylaw, may be developed for the purposes permitted in the district in which it is located, even though the small lot no longer conforms to minimum lot size requirements of the new bylaw or interim bylaw.

(A) A municipality may prohibit development of a lot if either of the following applies:

(i) the lot is less than one-eighth acre in area; or

(ii) the lot has a width or depth dimension of less than 40 feet.

(B) The bylaw may provide that if an existing small lot subsequently comes under common ownership with one or more contiguous lots, the nonconforming lot shall be deemed merged with the contiguous lot. However, a nonconforming lot shall not be deemed merged and may be separately conveyed if all the following apply:

(i) The lots are conveyed in their preexisting, nonconforming configuration.

(ii) On the effective date of any bylaw, each lot was developed with a water supply and wastewater disposal system.

(iii) At the time of transfer, each water supply and wastewater system is functioning in an acceptable manner.

(iv) The deeds of conveyance create appropriate easements on both lots for replacement of one or more wastewater systems, potable water systems, or both, in case there is a failed system or failed supply as defined in 10 V.S.A. chapter 64.

(C) Nothing in this subdivision (2) shall be construed to prohibit a bylaw that is less restrictive of development of existing small lots.

Vermont municipality, such as the town here, could maintain an ordinance more permissive than the state statute. However, one must read the statute in its entirety before arriving at a conclusion. Davis v. Hunt, 167 Vt. 263, 267 (1997) (in construing a statute we look to its entirety and attempt to harmonize its constituent parts).

The meaning of the phrase "existing small lots" in subsection (C) can be found in the prior language of that very statutory section. The first provision of 24 V.S.A. § 4412(2) is titled "**Existing small lots**" and is followed by definitional language. See supra note 3. Thus, subsection (C) authorizes a municipality to maintain regulations less restrictive of development of parcels that qualify as "existing small lots," as that term is defined by 24 V.S.A. § 4412(2). In light of the Legislature's decision to employ the phrase "existing small lots" in subsection (C), we conclude the facts here do not allow for the independent development of lots, such as parcel 2, that do not qualify under this defined term.

This case causes some to recall the familiar maxim that hard cases make bad law. Such may true here. First, our analysis does not focus upon the conformity of parcel 2 with the applicable lot size requirements. It is undisputed that parcel 2, if it were regarded as a separate lot, conforms to the applicable minimum lot size. But the parcel with which it was once held in common, parcel 1, did not conform to the 20,000 square-foot minimum lot size requirement when enacted in 1981, and did not conform to those requirements when parcel 1 was separately sold to a third party. Further, the concept of merger by operation of law, also known as "silent merger" or "secret merger"—terms that were used more frequently after the Richards I decision—is sometimes viewed with contempt because it occurs without any action by or to the property owner, and some would say without any direct notice to the property owner. Nonetheless, we are required to apply the applicable law as written, and will now attempt to fulfill that responsibility.

Subsection (C) allows municipalities to be more permissive of development of "existing small lots." To qualify as such, 24 V.S.A. § 4412(2) places two requirements on a parcel: it must be (1) "legally subdivided . . . [(2)] in individual and separate and nonaffiliated ownership from surrounding properties, and [(3)] is in existence on the date of enactment of any bylaw . . . ." It is undisputed that just before the Town increased the minimum lot size in the VR District to 20,000 square feet, parcels 1 and 2 existed as separate lots and conformed to the prior 8,000 square-foot minimum lot size requirement.[4]

But it is also undisputed that as of the 1981 zoning revisions, parcel 1, which had then become nonconforming, was held in common with parcel 2. The consequence of this joint ownership is that the two lots merged, thereby negating the nonconformity of lot 1. Richards I at 420–21. Unfortunately, the two merged lots could not be reconfigured so as to eliminate the nonconformity because their total size, 38,950 square feet, was less than required to establish two conforming lots under the amended Regulation (40,000 square feet).

We recognize the general consensus, emphasized by Developer, that § 4412(2) is more permissive than the former § 4406(1). Developer supplied the Court with some rather extensive materials on the legislative history of Act 115, of which the revisions to the existing small lot exemptions were a part. But before we can look to legislative history, we must first determine that the specific language of a statute is unclear. "If the statute [to be interpreted] is unambiguous and its words have plain meaning, we accept the statute's plain meaning as the intent of the Legislature and our inquiry proceeds no further." Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14 (citing Town of Killington v. State, 172 Vt. 182, 188 (2001)).

---

[4] Because our analysis here does not reach the merits of the pending enforcement action, we need not address Neighbors' suggestion that because the Supreme Court previously ruled that parcels 1 and 2 had merged as of 1981, Developer's subsequent conveyance of parcel 1 should be viewed as an illegal subdivision.

The very language of § 4412(2) that is at issue here is identical to the language in the former § 4406(1): both provisions define an "existing small lot" as one that existed in a conforming manner, prior to the applicable bylaw or its revision, "in individual and separate and nonaffiliated ownership from surrounding properties . . . ." Thus, we have little trouble interpreting the plain language of this section of the new statute in light of the Supreme Court's tremendous focus on that language in their <u>Richards I</u> decision. We find it impossible to conclude that our Legislature intended to effect a change in the definition of "existing small lots" when both the new and old statutes employ identical language to define that phrase.

Developer asserts that the Legislature intended to allow municipalities to be the entity charged with determining whether parcels that do not conform to the statutory definition of "existing small lots" should be developed in their communities. As admirable and advisable as this proposition is, we cannot see how subsection (C), as currently worded, can be interpreted as allowing any parcels other than those that qualify as existing small lots to be developed more permissively. Our conclusion here is reinforced by our understanding that the Legislature could have chosen to omit or use a phrase other than "existing small lots" in subsection (C), or could have specifically excluded the phrase "in individual and separate and nonaffiliated ownership" from the first sentence of § 4412(2). We may find it confusing as to why the Legislature would not engage in such alternate draftsmanship, particularly in light of the outcry surrounding the <u>Richards I</u> decision, but we find no confusion in the language chosen by the Legislature.

Where statutory language that has been construed by the courts is then used again by the Legislature, "the Legislature is presumed to have been familiar with their construction, and to have adopted it as a part of the law, unless it expressly provided for a different construction." <u>Russell v. Lund</u>, 114 Vt. 16, 22 (1944) (citing <u>In re Estate of Woolley</u>, 96 Vt. 60, 64 (1922); <u>Brace v. Hulett</u>, 109 Vt. 360, 366 (1938)). See also

Ratepayers Coalition of Rochester v. Rochester Elec. and Power Co., 153 Vt. 327, 330 (1989).

To qualify as an existing small lot, parcel 1 would have had to have been "in individual and separate and nonaffiliated ownership from surrounding properties" at the time it became nonconforming by operation of the 1981 zoning amendment, in order to conform to 24 V.S.A. § 4412(2). Because parcel 1 does not meet the definition of "existing small lot," it cannot qualify for the small lot exception, even under the new statute. Its failure to qualify ultimately brings about the same result as in the Richards I case: parcels 1 and 2 are deemed to have merged by operation of § 4412(2) for purposes of development.

Developer also urges this Court to focus on the new language and changes in language to the provisions now found in § 4412(2)(B), including that the reference to "merger" has been dropped from the language found in the former § 4406(1)(A). We do not find these changes applicable here, because those provisions pertain to lots that were held separately, were or became nonconforming as to the applicable minimum lot size requirements, and then "subsequently c[ame] under common ownership . . . ."[5] There is no suggestion in the record that parcel 1 or 2 were ever held independent of each other since 1967, including when the lot size amendment went into effect in 1981, when Developer purchased the properties jointly in a single deed[6] in 1996, and until Developer conveyed the undersized parcel 1 to a third party.

Moreover, no suggestion has been made that Act 115 changed or nullified the well-established principle of zoning law that nonconformities are "allowed only because the use preexists the applicable zoning requirement. A goal of zoning is to phase out such uses." Drumheller v. Shelburne Zoning Board of Adjustment, 155 Vt. 524, 529 (1990). The Act provided, in part, that all municipal zoning provisions contain

---

[5]  Language used in both § 4412(2)(B) and the former § 4406(1)(A).

[6]  There is no suggestion that lots merge by the mere fact that they are conveyed in a single deed.

the language of 24 V.S.A. § 4412(2), which allows for the development of undersized lots, provided that they were held "in individual and separate and nonaffiliated ownership from surrounding properties" when they no longer satisfied the applicable minimum lot size.

Parcel 1 did not qualify as an existing small lot when held by Developer; its failure to qualify as an existing small lot under § 4412(2) results in its merger by operation of law with parcel 2 for development purposes. The consequence of this merger is that the separate development of parcel 2 is prohibited by § 10.1.3 of the Zoning Regulations, which forbids more than one residential use per lot. Thus, we must grant Neighbor summary judgment in the first appeal, as the applicable law does not allow for the independent development of parcel 2, even when all facts are viewed in a light most favorable to Developer.

### III.    Enforcement Action

Our analysis now moves on to the pending enforcement action in Docket No. 156-8-05 Vtec. Neighbor filed his complaint on August 1, 2005, against Developer, the Town and its Zoning Administrator seeking enforcement of a zoning violation and requesting an injunction, compensatory and punitive damages, penalties, attorneys' fees and an order regarding Developer's alleged violation of the Regulations by constructing a single-family dwelling on parcel 2 without a zoning permit. Neighbor filed his complaint because the Zoning Administrator refused to commence an enforcement action against Developer, based on the Supreme Court's previous decisions in Richards I and Richards II in which the Court decided that Developer could not construct a house on parcel 2 because parcel 1 and parcel 2 had merged by operation of law under the former provisions of 24 V.S.A. § 4406(1).

On April 29, 2005, Neighbor wrote a letter to the Zoning Administrator requesting that the Town commence an enforcement action against Developer. The Zoning Administrator responded to Neighbor's request on June 16, 2005, at which time

he refused to commence an enforcement action because Developer was in the process of obtaining zoning approval of the house—the subject of Docket No. 77-4-05 Vtec. Neighbor then appealed the Zoning Administrator's determination that no enforcement action was warranted on June 29, 2005, but received no response from the DRB within a month. Neighbor then filed his complaint here on August 1, 2005, with the intention of preserving his rights to argue that an enforcement action was warranted.

Defendants have moved to dismiss Neighbor's complaint for failure to state a claim upon which relief can be granted. See V.R.C.P. 12(b)(6). "When reviewing the disposition of a Rule 12(b)(6) motion to dismiss, this Court assumes that all factual allegations pleaded in the complaint are true. We accept as true all reasonable inferences that may be derived from plaintiff's pleadings and assume that all contravening assertions in defendant's pleadings are false." Richards v. Town of Norwich, 169 Vt. 44, 48–49 (1999) (internal citations omitted).

Developer Nowicki requested in his dismissal motion that the Court award reimbursement of his attorneys' fees incurred while defending this enforcement action. Vermont adheres to the American Rule with respect to the award of attorneys' fees. Robes v. Town of Hartford, 161 Vt. 187, 198 (1993). "The American Rule ordinarily prohibits an award of attorney's fees absent a specific statutory provision or an agreement of the parties." Galkin v. Town of Chester, 168 Vt. 82, 91 (1998). In this instance, no such agreement exists. We are also not aware of any statutory provision which would permit an award of attorney's fees to a defendant in a zoning enforcement action, absent a showing of bad faith. We are not aware of any factual foundation of such bad faith on the part of Neighbor that might lead us to award Developer a reimbursement of his attorneys' fees. See Agency of Nat'l Res. v. Lyndonville Sav. Bank & Trust Co., 174 Vt. 498, 501 (2002) (describing the exception to the American Rule for bad faith conduct of litigants). Accordingly, we decline to award attorneys' fees to Developer.

In light of our decision above that Developer is not entitled to an after-the-fact permit for parcel 2, we are not inclined to dismiss Neighbor's enforcement action. Furthermore, we note that in light of Developer's decision to build a single-family dwelling on parcel 2 during the pendency of the previous litigation, and in light of Developer's sale of parcel 1, issues remain in this enforcement action, including possible liability, that are not solely dependent upon the outcome of the permit appeal just decided in Docket No. 77-4-05 Vtec. We will therefore allow the enforcement action to proceed to a hearing on the merits.

## IV. Neighbor's appeal of the Zoning Administrator's decision not to issue a Notice of Violation (Docket No. 220-10-05 Vtec)

Lastly, we turn our analysis to Neighbor's appeal of the DRB's decision to uphold the Zoning Administrator's determination that an enforcement action should not be initiated. Our analysis here is made more straightforward by our determination above that Neighbor's enforcement action in the prior docket should not be dismissed. We agree with the suggestion made in Neighbor's memorandum in response to the Town's motion to dismiss that this appeal and the pending enforcement action "could conceivably be consolidated." However, in light of our determination that the enforcement action should survive, we believe that the issues raised in this appeal are subsumed into the enforcement action. Stated differently, we envision no rights, liabilities or defenses in this appeal that cannot be maintained in the pending enforcement action. In the interests of judicial economy and to limit overlapping litigation, we shall dismiss Docket No. 220-10-05 Vtec.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Neighbor's cross-motion for summary judgment in Docket No. 77-4-05 Vtec is **GRANTED**, as Developer's zoning permit application cannot be granted under any factual scenario, in light of the determination that 24 V.S.A. § 4412(2) does not afford a

small lot exemption to the nonconforming parcel 1, thereby effecting a merger of parcel 1 and 2 by operation of law. Developer's cross-motion for summary judgment in Docket No. 77-4-05 Vtec is **DENIED** for the same reasons.

In Docket No. 156-8-05 Vtec, the motions to dismiss filed by Developer, the Town, and Zoning Administrator Dechert are hereby **DENIED**. Neighbor Richards is entitled to maintain the pending enforcement action as to Developer's past and present violations of the Norwich Regulations, as modified by the past and present small lot exemption statutes. Developer's request for reimbursement of his attorneys' fees in Docket No. 156-8-05 Vtec is also **DENIED** because the American Rule does not provide for reimbursement of attorneys' fees, absent bad faith, statutory authority, or an agreement of the parties regarding payment of attorneys' fees.

Lastly, the appeal in Docket No. 220-10-05 Vtec is hereby **DISMISSED** for reasons of judicial economy. Any rights, liabilities or defenses which could have been asserted in that appeal may be asserted in the enforcement action that remains pending in Docket No. 156-8-05 Vtec.

The parties are directed to prepare for a hearing on the merits in the pending enforcement action. The Court recognizes that this action raises some unique issues, not the least of which is the fact that the prosecuting entity is a private party and not the municipality. Nonetheless, such private enforcement actions are permitted under 24 V.S.A. § 4470(b). The parties are directed to file any remaining pre-trial motions, including those relating to discovery, standard of review or burden of proof, on or before **Friday, July 7, 2006**. The Court will thereafter schedule this matter for a merits hearing.

Done at Berlin, Vermont, this 8th day of June, 2006.


Thomas S. Durkin, Environmental Judge